IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

SHELICA JESSICA DANIELS,           )
                                   )
              Petitioner,          )
                                   )
       v.                          )         CV 115-128
                                   )         (Formerly CR 113-274)
UNITED STATES OF AMERICA,          )
                                   )
              Respondent.          )
_____

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
_____

Petitioner, an inmate at FCI Tallahassee in Florida, has filed with this Court a motion

under 28 U.S.C. § 2255 to vacate, set aside, or correct her sentence. For the reasons set forth

below, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED**, this

civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

## I.    BACKGROUND

### A.    Indictment and Information

On November 6, 2013, by superseding indictment, the grand jury in the Southern

District of Georgia charged Petitioner with one count of sex trafficking of a minor, in

violation of 18 U.S.C. § 1591(a)(1), (b)(2). United States v. Daniels, CR 113-199, doc. no.

54 (S.D. Ga. Nov. 6, 2013). The Court appointed attorney Peter D. Johnson to represent

Petitioner. (Id., doc. no. 112.) On August 22, 2014, the government dismissed the

indictment and, on December 17, 2013, filed an information charging Petitioner with

conspiracy to engage in sex trafficking of a minor in violation of 18 U.S.C. § 1594(c).

<u>United States v. Daniels</u>, CR 113-274, doc. no. 1 (S.D. Ga. Dec. 13, 2013) ("CR 113-274").

**B.     Agreement to Plead Guilty**

On January 15, 2014, Petitioner pleaded guilty to the one count of conspiracy.  (<u>Id.</u>,

doc. nos. 7-8.)  The plea agreement contained a broad appeal and collateral attack waiver that

stated in relevant part as follows:

> Defendant entirely waives her right to a direct appeal of her conviction and
> sentence on any ground.  The only exceptions are that the Defendant may file
> a direct appeal of her sentence if (1) the court enters a sentence above the
> statutory maximum, (2) the court enters a sentence above the advisory
> Sentencing Guidelines range found to apply by the court at sentencing; or (3)
> the Government appeals the sentence.  Absent those exceptions, Defendant
> explicitly and irrevocably instructs her attorney not to file an appeal . . .
> Defendant entirely waives her right to collaterally attack her conviction and
> sentence on any ground and by any method, including but not limited to a 28
> U.S.C. § 2255 motion.

(<u>Id.</u>, doc. no. 7, pp. 5-6.)  The plea agreement also contained confirmation by Defendant her

attorney "represented her faithfully, skillfully, and diligently, and she is completely satisfied

with the legal advice given and the work performed by her attorney."  (<u>Id.</u> at 8.)  Petitioner

attested she had carefully reviewed the plea agreement with her attorney and understood it,

the factual basis set out in the plea agreement was true and accurate, and she voluntarily

agreed to the plea agreement.  (<u>Id.</u> at 10.)

**C.     Change of Plea Hearing**

During the change of plea hearing, Judge Dudley H. Bowen Jr. established

Petitioner's competence to enter a guilty plea if she desired.  (<u>Id.</u>, doc. no. 13, p. 9.)

Petitioner also testified under oath she was satisfied with the services rendered by Mr.

Johnson.  (<u>Id.</u>)  Judge Bowen asked Petitioner if she understood the charges, to which

Petitioner replied, "Yes, sir."  (<u>Id.</u> at 12.)

Next, Judge Bowen asked if Petitioner understood the maximum penalties as announced by the Assistant United States Attorney ("AUSA"), which included life in prison. Petitioner confirmed she understood the possible penalties. (Id. at 13.) Judge Bowen also explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed she clearly understood those rights. (Id. at 14-15.) Among the rights explained, Judge Bowen reviewed the right to trial by jury, the government's burden to prove guilt beyond a reasonable doubt, the right to present and cross-examine witnesses, and the right to remain silent. (Id. at 13-15.) Petitioner affirmed no one had forced or pressured her to plead guilty, or made her any promises to induce her to plead guilty. (Id. at 15.) Petitioner affirmed no one had predicted, prophesied, or given her any guarantee as to what sentence Judge Bowen would impose. (Id. at 19.)

In addition, Judge Bowen reviewed the waiver provision in Petitioner's plea agreement, explaining she had "agreed to waive completely and entirely any right to make a collateral attack or habeas corpus petition against the fact of conviction." (Id. at 17.) Judge Bowen further explained Petitioner could "never contest guilt or innocence again in this case." (Id.) Judge Bowen also explained Petitioner was waiving any right to appeal on any ground unless the court imposed a sentence above the statutory maximum, the sentence exceeded the advisory guideline range, or the government filed an appeal. (Id.) Petitioner confirmed she understood these terms of her plea agreement. (Id. at 18.)

Next, Judge Bowen heard the factual basis for Petitioner's guilty plea from Special Agent Charles Edward McKee with the FBI. (Id. at 19.) SA McKee testified that on August 26, 2013, he received a tip from the National Center for Missing and Exploited Children (NCMEC) that a minor was being offered for prostitution on the website

3

www.Backpage.com.  (Id. at 20.)  Upon review of the advertisement, law enforcement acted in an undercover capacity and contacted the advertiser, arranging a meeting.  (Id.)  Upon arriving at the meeting location, law enforcement found the sixteen-year-old minor who was offered for prostitution services.  (Id.)

SA Mckee testified Petitioner originally retrieved the minor from her grandmother's residence.  (Id. at 23.)  At the time, the minor had an ankle monitor from a juvenile offense, and Petitioner helped cut off the ankle monitor.  (Id. at 24.)  SA McKee further testified Petitioner was aware the minor was under juvenile supervision at the time.  (Id.)  From August 13, 2013, to August 17, 2013, Petitioner was involved in arranging prostitution "dates" between the minor and customers.  (Id. at 23-24.)  Petitioner set up these dates through posting advertisements on www.Backpage.com, and arranged for customers to meet with the minor at Petitioner's residence.  (Id. at 24.)  On August 17, 2013, Petitioner ended her relationship with the minor, introduced the minor to Mr. Charles Castillo, and transitioned the minor into Mr. Castillo's prostitution operation.  (Id. at 25.)

When Judge Bowen asked whether Petitioner disagreed with SA McKee's testimony, Petitioner disagreed that she assisted the minor in cutting off the ankle monitor, and disagreed that she arranged for customers to meet with the minor at her residence.  (Id. at 30.)  Instead, Petitioner claimed the meetings she arranged occurred at hotels.  (Id. at 31.)  Petitioner affirmed that the rest of SA McKee's testimony was correct.  (Id.)  Petitioner told Judge Bowen she was guilty of, and wanted to plead guilty to, the offense charged in the information.  (Id. at 32.)

### D. Sentencing

The United States Probation Office then prepared a Presentence Investigation Report ("PSI") which set Petitioner's total offense level at forty, criminal history category of III, and a guideline imprisonment range at 360 months to life. (PSI ¶ 84.) Petitioner's base offense level was set at thirty, pursuant to U.S.S.G. §§ 2X1.1 and 2G1.3(a)(2). The base level was: (1) increased two points under U.S.S.G. § 3(b)(2)(B) because Petitioner unduly influenced a minor to engage in prohibited sexual conduct; (2) increased two points under U.S.S.G. § 2G1.3(b)(3) because the offense involved the use of a computer to solicit a person to engage in the illegal sexual conduct; (3) increased two points under U.S.S.G. §2G1.3(b)(4)(A) because the offense involved the commission of a sex act; (4) increased two points because Petitioner was an organizer, leader, manager, or supervisor of a criminal activity; and (5) increased five points under U.S.S.G. § 4B1.5(b)(1) because Petitioner engaged in a pattern of activity involving prohibited sexual conduct. (PSI ¶¶ 39-48.) The offense level was then reduced three points for acceptance of responsibility.

Through counsel, Petitioner objected to the two point enhancement under U.S.S.G. § 2G1.3(b)(2)(B), the two point enhancement under U.S.S.G. § 2G1.3(b)(3), and the five point enhancement under U.S.S.G. § 4B1.5(b)(1). (PSI addendum, pp. 1-5.) Judge Bowen took up Petitioner's objections at sentencing, overruled them, and adopted the factual statements contained in the PSI. (CR 113-274, doc. no. 25, p. 86.)

Judge Bowen then determined that the total offense level was forty after the three-level reduction for acceptance of responsibility, the criminal history category was III, and the sentencing range was 360 months to life imprisonment. (Id.) After considering mitigating factors, Judge Bowen sentenced Petitioner to 156 months, 204 months below the bottom of

the sentencing range. (Id. at 170.) Additionally, Judge Bowen ordered Petitioner to pay a $5,000 fine and a special assessment of $100. (Id. at 171.) In keeping with the terms of the plea agreement, Petitioner did not file a direct appeal. Petitioner did file, however, the instant § 2255 motion to vacate, set aside, or correct her sentence.

**E.      § 2255 Proceedings**

In her 28 U.S.C. § 2255 motion, Petitioner asserts four grounds for relief all couched in terms of ineffective assistance of counsel allegations:

I.      Petitioner was denied her Sixth Amendment right to effective assistance of counsel at the pretrial and trial stage when counsel failed to file various motions and raise appropriate arguments.

(a)      Counsel was ineffective for failing to review discovery with Petitioner.

(b)      Counsel was ineffective when he failed to investigate the victim and would have found the victim routinely lied about her age and identity.

(c)      Counsel was ineffective when he failed to investigate into the recruitment of the victim and would have discovered the victim was not recruited by Petitioner.

(d)      Counsel was ineffective when he did not raise the affirmative defense that the victim had an inclination towards prostitution.

(e)      The victim has since claimed in "various facebook posting [sic] that her testimony was false and forced from the government prosecutor and the petitioner has witnesses who will testify in an evidentiary hearing related to these postings."

(f)      But for counsel's unprofessional errors in (a)-(e), the result of the proceedings would have been different and Petitioner would have proceeded to trial.

II.      Counsel was ineffective when he did not present evidence of the victim's pending prostitution charges.

(a)    Counsel was ineffective when he failed to cross examine the victim about various pending prostitution charges in state court.

(b)    Counsel was ineffective for failing to investigate the victim's pending prostitution charges because this shows a propensity of the victim to engage in prostitution on her own, contrary to the victim's testimony.

(c)    But for these errors, Petitioner would have proceeded to trial.

III.    Petitioner was denied effective assistance of counsel at her sentencing hearing.

(a)    Counsel was ineffective when he incorrectly challenged errors in the PSI which enhanced Petitioner's sentence.

(b)    Counsel was ineffective when he failed to object to the sentencing enhancements, specifically § 2G1.3(b)(2)(B), 2G1.3(B)(3), § 2G1.3(b)(4)(A), §3B1.1(a), and §4B1.5(b)(1).

(c)    Counsel was ineffective for failing to challenge the use of the residual clause pursuant to <u>Johnson v. United States</u>, 135 S. Ct. 2551 (2015).

(d)    But for these errors, the result of the proceeding would have been different and Petitioner would have proceeded to trial.

IV.    Petitioner was denied effective assistance of counsel when counsel failed to file a notice of appeal.

(a)    Petitioner told her attorney to file a notice of appeal.

(b)    Petitioner notified her attorney of her wishes to file an appeal immediately after sentencing and no appeal was filed.

(c)    Petitioner's attorney advised her she could not file an appeal and therefore he did not file a notice of appeal.

(d)     The Court advised Petitioner she had a right to pursue an appeal at sentencing.

(e)     But for counsel's errors, the result of the proceeding would have been different and Petitioner would have received the benefit of a direct appeal.

(Doc. no. 2, pp. 1-21.)

The Court held a hearing concerning Ground IV on May 12, 2016, and heard testimony from Mr. Johnson and Petitioner.

### 1.     Testimony of Mr. Johnson

Mr. Johnson has been a practicing attorney since his admission to the Bar in 1983. Court's recording system, *For the Record* (FTR) 10:34.10-34.22.    Mr. Johnson unequivocally stated at no time did Petitioner tell him to file an appeal during the sentencing hearing.  FTR 10:51.45-52.05.  After Judge Bowen announced the sentence, Mr. Johnson did not have any conversation with Petitioner regarding an appeal.  FTR 10:37.00-37.35.

Mr. Johnson recalled Petitioner's case was unique in that Judge Bowen departed vastly downward from the guideline range to a point he believed Petitioner "got a break." FTR 10:38.00-38.26.  Petitioner received a sentence of 156 months, well below the bottom of the sentencing guideline range of 360 months.  FTR 10:46:00-46:50.  Mr. Johnson testified an appeal was the "last thing on [his] mind" given the outcome, and he had never seen such a favorable downward departure.  FTR 10:39.20-39.32.40; 10:45.50-10:46.10.  Mr. Johnson testified he believed there "were no meritorious issues for appeal." FTR 10:43.10-43.24.  Mr. Johnson further testified he believed a rational defendant would not have wanted to file an appeal, and it would have been a mistake to do so.  FTR 10:48.30-49.30.  Indeed, Mr. Johnson explained a successful cross-appeal of the sentence by the government could have resulted in a remand to Judge Bowen, with the instruction to re-sentence Petitioner within the

range of 360 months to life.

### 2. Testimony of Petitioner

Petitioner testified that, immediately after the sentencing hearing, she asked Mr. Johnson how many years 156 months was, and Mr. Johnson replied it was approximately thirteen years. FTR 10:56-00-56.40. Mr. Johnson then stated he could appeal the sentence if Petitioner wanted, to which Petitioner stated that yes, she did want to appeal. FTR 10:56-00-56.40. Petitioner testified the conversation was "ten seconds," and that she never saw Mr. Johnson again although she attempted to contact him numerous times. FTR 10:56.60-57.10.

On cross examination, Petitioner testified she had examined her plea agreement with Mr. Johnson and was aware of the appeal waiver. FTR 10:59.30-59:55. However, Petitioner stated Judge Bowen advised she could appeal her sentence at the sentencing hearing, which is what prompted Petitioner to ask Mr. Johnson to file an appeal. FTR 11:28.40-28.59. Although Petitioner maintained that Judge Bowen told her she could appeal her sentence at sentencing, the only reference by Judge Bowen to an appeal was an explanation that Petitioner had waived her right to an appeal except in the narrow grounds set forth in the plea agreement at Petitioner's Rule 11 hearing. (CR 113-274, doc. no. 13, p. 17.)

## II. DISCUSSION

### A. Under __Strickland v. Washington__, Petitioner Bears a Heavy Burden on an Ineffective Assistance of Counsel Claim.

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984). See Massaro v. United States, 538 U.S. 500, 505 (2003). Petitioner must show counsel was constitutionally ineffective under the two prongs of Strickland by proving defense counsel's performance was deficient and prejudicial.

Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691. "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013). Under the prejudice prong of Strickland, a petitioner must show "that there 'is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Brooks, 719 F.3d at 1300 (quoting Strickland, 466 U.S. at 694). As the Eleventh Circuit has ruled, a petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come

in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted).

Moreover, in the context of a guilty plea, a defendant must show that particular errors of counsel were unreasonable, and that they actually had an adverse effect on the defense. Hill v. Lockhart, 474 U.S. 52, 59 (1985); Stephens v. Sec'y, Fla. Dep't of Corr., 678 F.3d 1219, 1225 (11th Cir. 2012), cert. denied, 133 S. Ct. 484 (2012). In assessing whether a petitioner has met this standard, the Supreme Court has emphasized the "fundamental interest in the finality of guilty pleas." Hill, 474 U.S. at 58. Therefore, Petitioner must show both that counsel's representation fell below an objective standard of reasonableness causing prejudice, *and* that there is a reasonable probability that but for counsel's errors, he would have insisted on going to trial. Id. at 56-59.

**B.    Petitioner is Not Entitled to Relief on Her Ground IV Ineffective Assistance of Counsel Claim Regarding an Appeal.**

**1.    Petitioner Did Not Ask Counsel to File an Appeal.**

Cases in which a criminal defendant explicitly instructs her attorney to file a notice of appeal are subject to a bright-line rule. "[A]n attorney's failure to file an appeal after the defendant requests him to do so entitles the defendant to an out-of-time appeal, even without a showing that there would have been any viable grounds for an appeal." Montemoino v. United States, 68 F.3d 416, 417 (11th Cir. 1995); see also Flores-Ortega, 528 U.S. at 477-78 (holding it is professionally unreasonable for attorney to ignore defendant's express

instruction to appeal).  Thus, if the Court determines Mr. Johnson failed to honor a request to file a notice of appeal, it must grant Petitioner's § 2255 motion.

The threshold issue relates to credibility because there is a complete divergence in testimony between Petitioner and Mr. Johnson.  "Credibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses."  United States v. Williams, 731 F.3d 1222, 1230 (11th Cir. 2013) (citing United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002)); see also United States v. Pineiro, 389 F.3d 1359, 1366 (11th Cir. 2004) (recognizing credibility determinations are within province of the factfinder); Carr v. Schofield, 364 F.3d 1246, 1264-65 (11th Cir. 2004) (recognizing court's opportunity to observe and study witnesses and make credibility determinations concerning ineffective assistance claim).  In making its credibility determination, the Court must take into consideration not only the interests of the witness, but also "the internal consistency of the [witness's] testimony, or his candor or demeanor on the stand."  Ramirez-Chilel, 289 F.3d at 749, 750 (citation omitted).

Here, the Court specifically credits the testimony of Mr. Johnson over Petitioner.  Mr. Johnson, who has practiced as a criminal defense attorney for many years, is well-known to the Court and has demonstrated himself to be an ethical and zealous advocate for his clients. Any notion Mr. Johnson would ignore a specific request to file a notice of appeal on Petitioner's behalf and then lie to the Court about this circumstance is incredible.  At the hearing, Mr. Johnson's testimony was consistent and remained so during cross-examination. He never vacillated in his descriptions of conversations with Petitioner and of the actions taken during the course of his representation of Petitioner.   Mr. Johnson readily

acknowledged he had not consulted with Petitioner about filing an appeal because he strongly believed Petitioner received a fair sentence.

In contrast with the unwavering testimony of Mr. Johnson, Petitioner's self-serving testimony is unbelievable. As an initial point of inconsistency, Petitioner claims in her § 2255 motion that Mr. Johnson told her she "could not file a notice of appeal and therefore did not file a notice of appeal." (Doc. no. 2, p. 16.) However, at the hearing Petitioner testified Mr. Johnson said she could file an appeal to which Petitioner then responded for him to do so. FTR 10:56-00-56.40. This inconsistency between Petitioner's § 2255 motion and her hearing testimony suggests she is not credible.

Furthermore, Petitioner acknowledged Mr. Johnson had reviewed the terms of the plea agreement with her, and testified she was aware of the appeal waiver provision in the plea agreement. However, Petitioner claims that once Judge Bowen advised her she could appeal her sentence at the sentencing hearing, she believed the appeal waiver provisions no longer applied and instructed Mr. Johnson to file an appeal. When prompted to locate Judge Bowen's statement informing Petitioner she could appeal her sentence during the sentencing hearing, Petitioner was unable to do so. Indeed, a review of the sentencing transcript indicates Judge Bowen never informed Petitioner she could appeal her guilty plea or sentence. See generally CR 113-274, doc. no. 25. In fact, the only reference to an appeal occurred at Petitioner's Rule 11 hearing where Judge Bowen reminded Petitioner that as a consequence of her guilty plea she was waiving her right to appeal except for the limited circumstances specified in the plea agreement. Id., doc. no. 13, p. 17.

There are other problems with Petitioner's credibility. First, it is unlikely Mr. Johnson would have merely agreed to file an appeal without explaining the risk of the

government prevailing on a cross appeal that would result in a resentence within her guideline range of 360 months to life. And while Petitioner alleges she attempted to contact Mr. Johnson three times to discuss an appeal, Mr. Johnson flatly denied any attempts by Petitioner to contact him after sentencing. FTR 10:51.45-52.05. Petitioner apparently never bothered to write Mr. Johnson about the critical issue of an appeal when Mr. Johnson allegedly failed to return her phone calls, as no such correspondence is in the record.

In light of these considerations the Court finds Petitioner never requested that Mr. Johnson file an appeal.

### 2. Counsel Had No Duty To Consult Regarding an Appeal.

Even in cases where a defendant does not specifically instruct counsel to file an appeal, the Court "must still determine 'whether counsel in fact consulted with the defendant about an appeal,'" and if counsel did not consult, whether there was a duty to do so. Thompson v. United States, 504 F.3d 1203, 1206-08 (11th Cir. 2007). With respect to the instant motion, it is undisputed Mr. Johnson did not consult with Petitioner about an appeal after her sentencing. The determinative question, therefore, is whether there was a duty to consult under the circumstances.

"Counsel generally has a duty to consult with the defendant about an appeal." Id. at 1206 (citing Flores-Ortega, 528 U.S. at 481). However, the Supreme Court specifically declined to adopt "a bright-line rule that counsel must always consult with the defendant regarding an appeal." Flores-Ortega, 528 U.S. at 480; see also Otero v. United States, 499 F.3d 1267, 1270 (11th Cir. 2007) ("A criminal defense lawyer is not under a per se constitutional obligation to consult with his or her client about an appeal."). Rather, taking into consideration the totality of the circumstances,

> [C]ounsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

Flores-Ortega, 528 U.S. at 480. Furthermore, the Supreme Court provided the following guidance as to the circumstances that factor into the determination of whether counsel has a duty to consult with a defendant about an appeal:

> Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights.

Id.

The Court concludes Mr. Johnson did not have a duty to consult with Petitioner about an appeal. Indeed, each of the factors discussed in Flores-Ortega weighs against finding a duty to consult. Petitioner's conviction followed a guilty plea. Petitioner entered her plea pursuant to a plea agreement, and she received a sentence much lower than the guideline range of 360 months to life. Additionally, in her plea agreement, Petitioner waived the right to appeal her sentence so long as she received a sentence below the statutory maximum and below the maximum sentence in the advisory sentencing guidelines range. Thus, the scope of appealable issues was extremely narrow and the generously low sentence did not trigger any of the exceptions to her waiver.

Furthermore, Mr. Johnson was correct in his firm belief that no rational defendant would have wanted to appeal. Petitioner's advisory sentencing guideline range was between

360 months to life in prison. Judge Bowen sentenced Petitioner to 156 months, 204 months below the bottom of Petitioner's sentencing guideline range. As Mr. Johnson testified, Petitioner received an extremely fair sentence, and he had not seen such a favorable downward departure in his entire career. Mr. Johnson testified there were not any nonfrivolous grounds for an appeal and this conclusion appears to be correct given Petitioner's guilty plea, her broad appeal waiver, and her favorable sentence. Finally, Petitioner did not reasonably demonstrate to Mr. Johnson that she wanted to appeal. Her testimony that she instructed Mr. Johnson to file an appeal is not credible as explained above. Moreover, according to the unequivocal and credible testimony of Mr. Johnson, Petitioner gave no indication after Judge Bowen announced the sentence that she wanted to appeal.

In sum, the Court finds Petitioner has not established that Mr. Johnson's representation fell below an objective standard of reasonableness because the credible evidence shows Petitioner did not instruct Mr. Johnson to file an appeal, and Mr. Johnson had no duty to consult about filing an appeal. Accordingly, all of Petitioner's claims in Ground Four do not afford Petitioner with relief.

### C. By Knowingly and Voluntarily Agreeing to the Collateral Attack Waiver, Petitioner Waived Her Remaining Claims in Grounds I, II, and III.

Grounds I, II, and III are precluded by Petitioner's waiver in the plea agreement of her right to collaterally attack her conviction and sentence. It is well settled that a waiver of the right to collaterally attack a sentence and conviction is only enforceable if the waiver is knowing and voluntary. United States v. Warner-Freeman, 270 F. App'x 754, 757 (11th Cir. 2008) (*per curiam*); United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001); United

States v. Bushert, 997 F.2d 1343, 1345 (11th Cir. 1993).[1] "To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver." Weaver, 275 F.3d at 1333. If the government meets this burden, the collateral attack waiver is valid. See United States v. Pease, 240 F.3d 938, 942 (11th Cir. 2001) (*per curiam*) (enforcing waiver provision where defendant was specifically questioned during plea proceedings about waiver); United States v. Howle, 166 F.3d 1166, 1168-69 (11th Cir. 1999); United States v. Benitez-Zapata, 131 F.3d 1444, 1146-47 (11th Cir. 1997).

Here, Respondent has demonstrated the existence of a valid collateral attack waiver. The plea agreement signed and verified by Petitioner fully set forth that, as a condition of her guilty plea, she was waiving any right to collaterally attack her sentence and conviction or the knowing and voluntary nature of her guilty plea. (See CR 113-274, doc. no. 7, pp. 5-6, 10. ("Defendant entirely waives her right to collaterally attack her conviction and sentence on any ground and by any method, including but not limited to a 28 U.S.C. § 2255 motion.").) Furthermore, Judge Bowen thoroughly reviewed the plea agreement during the plea colloquy, specifically reviewing the waiver provision. (Id., doc. no. 13, p. 17.) After Judge Bowen concluded his review of the plea agreement, Petitioner acknowledged she understood the terms of her plea agreement. (Id. at 18.)

Therefore, Judge Bowen specifically questioned Petitioner about the waiver provision, and Petitioner fully understood its significance such that the collateral attack

---

[1]Case law concerning waiver of a direct appeal also applies to waiver of the right to collateral proceedings. See Bushert, 997 F.2d at 1345; see also Vaca-Ortiz v. United States, 320 F. Supp. 2d 1362, 1364-67 (N.D. Ga. 2004).

waiver was knowing and voluntary. <u>Weaver</u>, 275 F.3d at 1333. While Petitioner would have the Court ignore her responses to Judge Bowen's questions, "solemn declarations in open court [at a guilty plea hearing] carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1997).

The Court is aware certain ineffective assistance of counsel claims can survive a valid collateral attack waiver, but "only when the claimed assistance directly affected the validity of that waiver or the plea itself." <u>Williams v. United States</u>, 396 F.3d 1340, 1342 n.2 (11th Cir. 2005). Indeed, the Eleventh Circuit recognizes that "there may be a distinction between a § 2255 claim of ineffective assistance in entering or negotiating the plea versus a claim of ineffectiveness at sentencing or a claim challenging the validity of the plea or agreement." <u>Williams</u>, 396 F.3d at 1342 n.2; <u>see also</u> <u>Vaca-Ortiz</u>, 320 F. Supp. 2d at 1365 ("[T]he court notes that a criminal defendant could not waive the right to bring a claim for ineffective assistance of counsel in which he alleges ineffectiveness at the time he was entering the plea or ineffectiveness related to advice he received regarding the waiver."). This is so because ineffective assistance of counsel in entering the plea "would require a finding that the plea was not entered knowingly and voluntarily, which would in turn mean that a court could not enforce a waiver contained within that plea agreement." <u>Vaca-Ortiz</u>, 320 F. Supp.2d at 1365 (citing <u>Bushert</u>, 997 F.2d at 1350-51).

Petitioner's claims in Grounds I, II, and III are all barred by the collateral attack waiver because they are not related to the validity of Petitioner's waiver or plea. <u>See</u> <u>Williams</u>, 396 F.3d at 1342 n.2. Furthermore, even if these claims could escape the collateral

attack waiver, Petitioner's claims are meritless and do not establish counsel rendered ineffective assistance, as discussed *infra*.

**D.  Petitioner's Counsel was Not Ineffective.**

**1.  Petitioner Has Failed to Demonstrate Prejudice from Counsel's Alleged Failure to Investigate.**

In Grounds I(b), I(c) and II(b), Petitioner asserts that counsel failed to investigate the victim's propensity to lie about her age and identity, pending prostitution charges, and recruitment into prostitution.  (Doc. no. 2, pp. 9, 13.)  "Where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea."  Hill v. Lockhart, 474 U.S. 52, 60, (1985).  The Supreme Court in Hill stated: "[t]his assessment . . . will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial."  Id.  Similarly, "[w]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial."  Id.  The Eleventh Circuit has similarly held that "no absolute duty exists to investigate particular facts or a certain line of defense."  Chandler v. United States, 218 F.3d 1305, 1317 (11th Cir. 2000).

In Ground I(b), Petitioner claims counsel was ineffective when he failed to investigate the victim and discover she routinely lied about her age and identity.  (Doc. no. 2, p. 9.) Here, Petitioner does not explain how this "error" by counsel adversely impacted her

decision to plead guilty.  First, Petitioner admitted at the time of her arrest she knew the victim was a minor.  (PSI ¶ 28.)  The investigation and prosecution originated from an alert sent by Petitioner to www.Backpage.com wherein Petitioner informed the website that the victim was engaged in prostitution, was fifteen years old at the time, and was wanted by law enforcement.  (PSI ¶ 6.)  Furthermore, Petitioner admitted to the factual basis for her guilty plea during her Rule 11 hearing, which included SA McKee's testimony Petitioner was aware the victim was under juvenile supervision.  (CR 113-274, doc. no. 13, pp. 24, 31.)  In light of these admissions, Petitioner cannot show that, had counsel investigated the victim's propensity to lie about her age, such investigation would have changed the outcome of a trial. Consequently, Petitioner cannot demonstrate prejudice.

Likewise, Petitioner cannot show prejudice in her Ground I(c) claim counsel was ineffective for failing to investigate the recruitment of the victim, in which counsel would have allegedly discovered that Petitioner did not recruit the victim.  (Doc. no. 2, p. 9.)  In the information, Petitioner was charged with conspiracy to "knowingly recruit, entice, harbor, transport, provide, obtain and maintain by some means a person . . . and to receive anything of value from participation in [the] venture . . . knowing that [the victim] had not attained the age of 18 years . . . ."   18 U.S.C. § 1591(a); (CR 113-274, doc. no. 1, p. 1.)  During Petitioner's Rule 11 hearing, Petitioner admitted to the factual basis for her guilty plea which included SA McKee's testimony Petitioner transported the victim from the victim's grandmother's residence, and provided the victim "dates" with clients.  (Id., doc. no. 13, p. 23-26, 31.)  Regardless of whether Petitioner recruited the victim, she admitted to conduct sufficient to satisfy the charge in the information.  Accordingly, Petitioner cannot show that

had counsel investigated the recruitment of the victim, such investigation would have changed the outcome of a trial. Consequently, Petitioner fails to demonstrate prejudice.

In Ground II(b), Petitioner again fails to establish her counsel rendered ineffective assistance for failing to investigate the victim's pending prostitution charges, which according to Petitioner, would have shown the victim's "propensity" to engage in prostitution. (Doc. no. 2, p. 13.) Once more, Petitioner cannot demonstrate prejudice because the victim's "propensity" is irrelevant for prosecution under 18 U.S.C. § 1594(c). See 18 U.S.C. §§ 1594(c), 1591; United States v. Brooks, 610 F.3d 1186, 1199 (9th Cir. 2010) ("[V]ictim's willingness to engage in sexual activity is irrelevant [under 18 U.S.C. § 1591], in much the same way that a minor's consent to sexual activity does not mitigate the offense of statutory rape or child molestation.")

Indeed, Mr. Johnson averred in his affidavit that he was well aware the victim engaged in acts of prostitution before she met Petitioner. (Doc. no. 6-1, ¶ 6.) However, this knowledge did not change Mr. Johnson's mind as to whether a plea deal was the best strategy. (Id.); Hill, 474 U.S. at 60. In light of Petitioner's admissions to law enforcement, Mr. Johnson recognized the best strategy was pursuing a guilty plea for "damage control" purposes. (Doc. no. 6-1, ¶ 7.); Chandler, 218 F.3d at 1318 ("[C]ounsel need not always investigate before pursuing or not pursing a line of defense . . . [i]nvestigation (even a non exhaustive, preliminary investigation) is not required for counsel reasonably to decline to investigate a line of defense thoroughly."). Furthermore, the Court at sentencing was well aware of the victim's "prior inclination" towards prostitution, explaining in part why Petitioner received such a strong downward variance from her guideline range. (CR 113-274, doc. no. 25, p. 167.) Regardless of whether the victim had pending prostitution charges

or a propensity to engage in prostitution, Petitioner has not established counsel's alleged failure to investigate resulted in prejudice, and Petitioner has not shown a reasonable probability of a different outcome.

### 2. Petitioner's Claims in I(a), I(d), I(e), III(c) are Meritless and Do Not Establish Prejudice.

In Ground I(a), Petitioner alleges, without providing any specific facts, her counsel was ineffective for failing to "review the discovery provided to him with the petitioner." (Doc. no. 2, p. 9.) Notably, Petitioner does not specify what counsel allegedly failed to review with her, nor does she describe how counsel's alleged failure to review discovery influenced her decision to plead guilty. Here, Petitioner's conclusory assertion counsel failed to review discovery with her is facially insufficient to show prejudice. See Xayavongsane v. Mingo, No. 8:03-CV-2386-T-30, 2006 WL 398421, at *4 (M.D. Fla. Feb. 16, 2006) ("Conclusory statements are facially insufficient to show prejudice.")

Furthermore, this assertion is belied by Petitioner's sworn representations to the Court at Petitioner's Rule 11 hearing. Judge Bowen specifically asked Petitioner if she had enough time to discuss and prepare her case with her attorney, and also asked if Petitioner was entirely satisfied with her attorney's handling of the case. CR 113-274, doc. no. 13, p. 9. To all of these questions, Petitioner replied in the affirmative. Id. Consequently, belied by Petitioner's own sworn admissions to the Court, Petitioner cannot now claim her counsel was ineffective for failing to review discovery and she cannot establish prejudice. See Blackledge, 431 U.S. at 74.

In Ground I(d), Petitioner asserts her attorney failed to argue the victim had a prior relationship with prostitution, creating an "affirmative defense." (Doc. no. 2, p. 9.) This

claim is frivolous as the victim's proclivity to engage in sexual activity is not an affirmative defense under 18 U.S.C. § 1591. See 18 U.S.C. § 1591. Indeed, a victim's willingness to engage in sexual activity is irrelevant. See Brooks, 610 F.3d at 1199.

In Ground I(e), Petitioner states counsel was ineffective because "the purported 'victim' has since also claimed in various facebook posting [sic] that her testimony was false and forced from the government . . . ." (Doc. no. 2, p. 9.) This assertion, even if true, has no relevance to a Sixth Amendment ineffective assistance of counsel claim or any alleged violation of Petitioner's constitutional rights. In addition, Petitioner fails to specify exactly what information the victim provided that is false, and Petitioner swore under oath at her change of plea and sentencing to facts that satisfy the elements of her conviction.

In Ground III(c), Petitioner alleges counsel was ineffective for failing to challenge Judge Bowen's purported use of the residual clause in sentencing, pursuant to Johnson. (Doc. no. 2, p. 15.) In Johnson, the Supreme Court found the "residual clause" of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(ii) ("ACCA"), to be void for vagueness and a violation of the Constitution's guarantee of due process. Johnson, 135 S. Ct. at 2563. The "residual clause" of the ACCA violent felony definition includes a crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii).

Petitioner was not sentenced under the ACCA and Johnson plainly does not apply. See PSI ¶ 38-51. Accordingly, Petitioner cannot establish her counsel performed deficiently in failing to raise a meritless Johnson claim. See United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992).

**3.** **Grounds II(a), III(a), and III(b) are Conclusively Barred By the Collateral Attack Waiver and Otherwise Fail to Establish Ineffective Assistance.**

In Ground II(a), Petitioner alleges counsel was ineffective for failing to cross examine the victim about her pending prostitution charges, presumably at the sentencing hearing. (Doc. no. 2, p. 13.) In Ground III(a) and (b), Petitioner alleges counsel was ineffective for incorrectly challenging errors in the PSI which led to a "significant enhanced sentence," and for failing to object to the sentencing enhancements, specifically § 2G1.3(b)(2)(B), 2G1.3(B)(3), § 2G1.3(b)(4)(A), §3B1.1(a), and §4B1.5(b)(1). Because Petitioner contends counsel was ineffective during the sentencing hearing, these claims do not challenge the voluntariness of her guilty plea and are conclusively barred by the collateral attack waiver. See Williams, 396 F.3d at 1342 n.2.

Even if the collateral attack waiver does not apply to these claims, which it does, these claims fail to establish ineffective assistance. Petitioner has not demonstrated the result of her proceeding would have been different had counsel cross-examined the victim at the sentencing hearing about her pending prostitution charges. As noted *supra* Part II D. 1, the sentencing court was well aware of Petitioner's "prior inclination" to engage in prostitution, sentencing Petitioner well below her advisory guideline range. (CR 113-274, doc. no. 25, p. 167.)

Furthermore, although Petitioner faults her counsel for failing to challenge the PSI and sentencing enhancements, at sentencing, Petitioner's counsel objected to three enhancements, U.S.S.G. § 2G1.3(b)(2)(B), U.S.S.G. § 2G1.3(b)(3), and U.S.S.G. § 4B1.5(b)(1). These objections were overruled. (PSI addendum, pp. 1-5.; CR 113-274, doc. no. 25, p. 86.) Petitioner's counsel objected to a § 3B1.1(a) enhancement prior to sentencing,

and consequently this enhancement was not applied to Petitioner.  (See doc. no. 6-1, ¶ 10; PSI ¶¶ 38-51.)  Finally, Petitioner's admissions to the factual basis underlying her guilty plea at the Rule 11 hearing belie any claim Petitioner has that her underlying conduct did not involve the commission of a sex act or sexual contact for U.S.S.G. § 2G1.3(b)(4)(A) purposes.  Counsel was not ineffective for failing to challenge U.S.S.G. § 2G1.3(b)(4)(A) prior to sentencing.  See Winfield, 960 F.2d at 974.

In sum, even if the collateral attack waiver does not bar these claims, they are meritless and do not establish either deficient performance nor prejudice under Strickland.

### 4. Petitioner's Conclusory Assertions in Grounds I(f), II(c), and III(d) She Would Have Proceeded to Trial Do Not Establish Prejudice.

In Grounds I(f), II(c) and III(d), Petitioner claims but for counsel's errors she would not have pleaded guilty and would have proceeded to trial.  First, as detailed *supra*, counsel did not render ineffective assistance.  Second, these conclusory statements do not establish prejudice and do not warrant relief.  See Hodges v. Colson, 727 F.3d 517, 539 (6th Cir. 2013) (denying petitioner's conclusory habeas claim he would have proceeded to trial but for counsel's ineffective assistance because all objective evidence pointed unequivocally to the contrary); Torres-Cuesta v. United States, No. 09-CV-91, 2010 WL 3928588, at *4 (E.D.N.Y. Sept. 30, 2010) ("Because a convicted defendant will always have a strong incentive to make a prejudice claim after conviction, courts are skeptical of self-serving, post-conviction testimony that but for counsel's bad advice, the defendant would have pled guilty or gone to trial."); Marquez v. United States, No. 11-CR-629 (CS), 2014 WL 12452472, at *6 (S.D.N.Y. Oct. 16, 2014) ("Indeed, even if Petitioner said now that he

wanted to go to trial, a "self-serving and conclusory statement" that Petitioner would have gone to trial does not suffice, in the face of facts like those cited above, to show prejudice.").

Here, Petitioner's conclusory claims she would have proceeded to trial but for counsel's alleged deficiencies fails to establish prejudice in light of the overwhelming evidence to the contrary. Petitioner's guilt was never factually in dispute. Indeed, as discussed *supra*, the entire investigation originated from Petitioner's email to NCMEC stating "This girl is 15 yrs old n wanted by the ydc law police. Her mother has been looking for her for over two weeks now . . . maybe the law should no she is on ur web site." PSI ¶ 6. After her arrest, Petitioner admitted she prostituted the victim in June 2013, and admitted she transported the victim from her grandmother's residence to engage in prostitution. PSI ¶ 28. When questioned by Judge Bowen at her Rule 11 proceeding, Petitioner did not waver in her intent to plead guilty. Consequently, the overwhelming weight of evidence within the record belies Petitioner's conclusory allegations she would have proceeded to trial and fails to establish prejudice.

In sum, for the reasons discussed above, Petitioner has failed to establish that counsel was ineffective with her various allegations of counsel's deficiencies before and after she entered the guilty plea. Put another way, Petitioner has failed to show how the outcome of the proceeding would have been different—i.e., that she would not have entered the guilty plea she did but for counsel's alleged errors. See Strickland, 466 U.S. at 687; Hill, 474 U.S. at 59. Petitioner is therefore not entitled to relief on any of the claims of ineffective assistance of counsel in her § 2255 motion.

### E. Petitioner's Guilty Plea was Knowingly and Voluntarily Entered.

Having determined that Petitioner did not receive constitutionally ineffective assistance of counsel, the Court will lastly address any implication derived from the § 2255 motion that Petitioner's guilty plea was otherwise not knowingly and voluntarily entered. The record makes clear any argument to this effect is without merit.

### 1. Standard of Enforceability of Guilty Pleas.

Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea. U.S. v. Broce, 488 U.S. 563, 569 (1989). In conducting its analysis, the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary. Boykin v. Alabama, 395 U.S. 238, 242-43 (1969). The Eleventh Circuit has described the requirements for a valid guilty plea as follows: "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights. A plea of guilty cannot support a judgment of guilt unless it was voluntary in a constitutional sense." U.S. v. Brown, 117 F.3d 471, 476 (11th Cir. 1997). A guilty plea may be involuntary in a constitutional sense if a defendant is coerced into his plea, if a defendant does not understand the nature of the constitutional protections he is waiving, or "if a defendant has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." Id. Thus, a defendant must receive "real notice of the true nature of the charged crime." Id.

The Eleventh Circuit has further explained that, for a guilty plea to be made knowingly and voluntarily, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." U.S. v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (*per curiam*) (citations omitted). In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error [under Rule 11 of the court accepting the guilty plea], he would not have entered the plea." Id. at 1020 (quoting U.S. v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

### 2. Judge Bowen's Colloquy with Petitioner Satisfied the Three Core Principles Required for Acceptance of a Guilty Plea.

Judge Bowen informed Petitioner in clear terms of the charges to which she was pleading guilty, as well as the penalties that might be imposed in the event of Petitioner's conviction, and Petitioner testified that she understood the charges and penalties. (CR 113-274, doc. no. 13, p. 12.) Petitioner also admitted to facts presented by the government that would satisfy the elements of the crime to which she was pleading guilty. (Id. at 30-31.) Judge Bowen provided a detailed explanation of the rights Petitioner would forfeit by pleading guilty, and Petitioner affirmed she understood her decision to plead guilty would result in a waiver of these rights. (Id. at 13-15.) Petitioner testified that no one had made her any promises to get her to plead guilty, nor had anyone forced, threatened, or pressured her to do so. (Id. at 15.) Petitioner also testified that she had reviewed his case with Mr. Johnson and was satisfied with the assistance she had received from Mr. Johnson. (Id. at 9.) Thus, Judge Bowen's thorough plea colloquy ensured that Petitioner understood both the

nature of the charges and the consequences of her guilty plea, and that Petitioner was not coerced into pleading guilty. See Moriarty, 429 F.3d at 1019. Petitioner has not argued, let alone shown a reasonable probability that but for any alleged error at the Rule 11 proceeding she would not have entered her guilty plea. See Dominguez Benitez, 542 U.S. at 83.

As such, Petitioner will not now be heard to claim that her guilty plea was not knowingly and voluntarily entered. Such assertions are contradicted by the record of the Rule 11 hearing and Petitioner's sworn testimony at that proceeding. See U.S. v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (noting that "if the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely").

## III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the § 2255 motion be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 29th day of August, 2016, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA